Affirmed in Part; Reversed and Remanded in Part; and Opinion filed
August 14, 2007








Affirmed in
Part; Reversed and Remanded in Part; and Opinion filed August 14, 2007.

 

                                                                              

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00663-CV

____________

 

DOUGLAS G. BEATTY, INDIVIDUALLY AND
AS INDEPENDENT EXECUTOR OF THE ESTATE OF KATHRYN V. HOLMES, DECEASED, Appellant

 

V.

 

HARRY HOLMES, II, INDIVIDUALLY AND
AS INDEPENDENT EXECUTOR OF THE ESTATE OF THOMAS J. HOLMES, SR., DECEASED, AND
AS TRUSTEE OF ANY TRUST NAMED AS LEGATEE IN THE WILL OF THOMAS J. HOLMES, SR.,
DECEASED,
Appellee

 



 

On Appeal from the Probate
Court No. 1

Harris County, Texas

Trial Court Cause No. 308,541-402

 



 

O P I N I O N








In this appeal, and in companion case number
14-05-00474-CV, we must address several issues of first impression and
determine whether Thomas J. Holmes, Sr. and Kathryn V. Holmes, a husband and
wife, both deceased, owned certain brokerage accounts and securities in
certificate form with a right of survivorship.  In this case, appellant,
Douglas G. Beatty, Individually and as Independent Executor of the Estate of
Kathryn V. Holmes, Deceased (ABeatty@), challenges the
portions of the trial court=s partial summary judgment, ruling that
the spouses owned a Dain Rauscher account and certain securities in certificate
form with a right of survivorship and thus awarding these assets to appellee,
Harry Holmes, II, Individually, and as Independent Executor of the Estate of
Thomas J. Holmes, Sr., Deceased (AHolmes@).  We reverse and
remand with respect to the Dain Rauscher account and securities in certificate
form.  We affirm the remainder of the judgment.

I.  Background

Thomas and Kathryn Holmes were married in 1972.  Kathryn
died on July 22, 1999.  Beatty, Kathryn=s son from a
previous marriage, was appointed independent executor of her estate.  Thomas
died on May 4, 2000, about nine months after Kathryn=s death.  Holmes,
Thomas=s son from a
previous marriage, was appointed independent executor of his estate.        During
the marriage, Kathryn and Thomas placed a significant amount of their community
property into brokerage accounts.[1] 
When Kathryn died, some brokerage accounts were in existence and held
securities.  Kathryn and Thomas also held some securities in certificate form
that had been issued out of brokerage accounts.  The property that is the
subject of these appeals has a multi-million dollar value.








Beatty sued Holmes, seeking a declaratory judgment that
certain accounts and securities were not owned by Kathryn and Thomas with a
right of survivorship and thus did not pass to Thomas upon Kathryn=s death.  Instead,
Beatty claimed that Kathryn=s one-half interest in this community
property became assets of her estate upon her death.  Holmes filed a
counterclaim, alleging the property was owned by Kathryn and Thomas with a
right of survivorship.  Therefore, Holmes sought an adjudication that the
accounts and securities became the sole property of Thomas upon Kathryn=s death and
subsequently became assets of Thomas=s estate upon his
death.

Relative to this appeal, Holmes filed a motion for partial
summary judgment.   On March 11, 2003, the trial court signed a ASummary Judgment,@ granting Holmes=s motion in part
as to certain accounts and securities.[2] 
Pertinent to this appeal, the trial court ruled the following are the property
of Holmes, as assets of Thomas=s Estate, and Kathryn=s Estate has no
interest therein:

!                  
a Dain Rauscher
brokerage account;[3]
and

!                  
Thirty-six
securities which had been issued out of a Kemper Securities, Inc. account,[4]
a Raymond James & Associates, Inc. account, or a Principal/Eppler, Guerin
& Turner, Inc. account[5]
and were held in certificate form by Kathryn and Thomas during the marriage. 

This order was made final and appealable after the trial
court severed it from the remainder of the case.  Beatty appeals from this
order.

 








II.  The Issues and Our Review

Holmes moved for summary judgment on the ground that the
Dain Rauscher brokerage account and the securities held in certificate form
were owned by Kathryn and Thomas with a right of survivorship pursuant to
applicable provisions of the Texas Probate Code.  In two issues, Beatty
contends the trial court erred by granting summary judgment in favor of Holmes
because (1) the Dain Rauscher account agreement did not create a right of
survivorship; and (2) the securities held in certificate form were not subject
to a right of survivorship.

Under well-established standards governing a traditional
motion for summary judgment, the movant must show that there is no genuine
issue as to any material fact and he is entitled to judgment as a matter of
law.  See Tex. R. Civ. P.
166a(c); Nixon v. Mr. Prop.  Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985).  We review a summary judgment de novo.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  We take as true all evidence
favorable to the nonmovant, and we indulge every reasonable inference and
resolve any doubts in the nonmovant=s favor.  Id.

III. The Dain Rauscher Account

In his first issue, Beatty contends the Dain Rauscher
account agreement did not create a right of survivorship under applicable
provisions of the Texas Probate Code. For the reasons explained below, we
agree.

A.      Applicable
Probate Code Provisions








Chapter XI of the Texas Probate Code governs
non-testamentary transfers of property.  See Tex. Prob. Code Ann. '' 436B462 (Vernon 2003
& Vernon Supp. 2006).  Chapter XI is divided into three parts.  See id. 
Part 1 addresses AMultiple-Party Accounts@ in general.  See
Tex. Prob. Code Ann. '' 436B449.  Part 2
concerns AProvisions Relating to Effect of Death.@  See Tex. Prob. Code Ann. ' 450.  Part 3 is
entitled ACommunity Property With Right of Survivorship.@  Tex. Prob. Code Ann. '' 451B462.

As the title indicates, Part 3 includes various provisions
governing a right of survivorship in community property.  See id.;
see also Tex. Prob. Code Ann.
' 46(b) (Vernon
2003) (stating that agreements between spouses regarding rights of survivorship
in community property are governed by Part 3 of Chapter XI).  In particular,
section 451 provides, A[a]t any time, spouses may agree between
themselves that all or part of their community property, then existing or to be
acquired, becomes the property of the surviving spouse on the death of a
spouse.@  Tex. Prob. Code Ann. ' 451.  Section
452, entitled AFormalities,@ establishes the
requirements for an effective agreement between spouses as follows:

An agreement between spouses creating a right of survivorship in
community property must be in writing and signed by both spouses.  If an
agreement in writing is signed by both spouses, the agreement shall be
sufficient to create a right of survivorship in the community property
described in the agreement if it includes any of the following phrases:

(1) Awith right of survivorship@;

(2) Awill become the property of the survivor@;

(3) Awill vest in and belong to the surviving spouse@; or

(4) Ashall pass to the surviving spouse.@

An agreement that otherwise meets
the requirements of this part, however, shall be effective without including
any of those phrases.








Tex. Prob. Code Ann. ' 452.  The party
claiming that spouses agreed to create a right of survivorship under Part 3
bears the burden to prove the agreement complied with section 452.  See Tex. Prob. Code Ann. ' 456(a),(b)(3)
(providing applicant for adjudication that an agreement effectively created a
right of survivorship under Part 3 must prove to the satisfaction of the court
that, inter alia, the agreement was executed with the formalities required by
law); see also Pressler v. Lytle State Bank, 982 S.W.2d 561, 564
(Tex. App.CSan Antonio 1998, no writ) (recognizing party claiming
to own a joint account pursuant to a right of survivorship under section 439 of
Part 1, governing multi-party accounts in general, bears burden to prove the
claim).

In this case, the parties agree that Kathryn and Thomas
were required to comply with section 452 to create a right of survivorship in
the Dain Rauscher account.

B.      The Dain
Rauscher Account Agreement

To open the Dain Rauscher account, Kathryn and Thomas both
signed a written AJOINT ACCOUNT AGREEMENT@ dated February
24, 1994.[6] 
This document is a pre-printed form provided by the brokerage firm with
information to be completed particular to Kathryn=s and Thomas=s account.  In the
agreement, the owners of the account are identified as AThomas J. Holmes
and Kathryn V. Holmes, JT TEN.@

At the bottom of the agreement is the following
instruction:  AStrike out paragraph (a) or (b) whichever is
inapplicable, and if paragraph (b) is retained, fill in the names and
percentage amounts of the interests of the respective parties.@  Paragraphs (a)
and (b) provide the following choices:

(a)  It is the express intention of the undersigned
to create an estate or account as joint tenants with rights of survivorship and
not as tenants in common.  In the event of the death of either of the
undersigned, the entire interest in the joint account shall be vested in the
survivor or survivors on the same terms and conditions as theretofore held,
without in any manner releasing the decedent=s estate from the liability provided for in the next
preceding paragraph.

(b)  In the event of the death of either or any of
the undersigned the interests in the account as of the close of business on the
date of the death of the decedent (or on the next following business day if the
date of death is not a business day), shall be as follows:

 








 

________________________________ or his or her estate ____________%

Name of Participant

________________________________ or his or her estate ____________%

Name of Participant

________________________________ or his or her estate ____________%

Name of Participant

but any taxes, costs, expenses or
other charges becoming a lien against or being payable out of the account as
the result of the death of the decedent, or through the exercise by his or her
estate or representatives of any rights in the account shall, so far as
possible, be deducted from the interest of the estate of such decedent.  This
provision shall not release the decedent=s estate from the
liability provided for in the paragraph next preceding A(a)@ above.

Neither paragraph (a) nor paragraph (b) was marked out, and
none of the blanks in paragraph (b) were filled in.  

Beneath paragraph (b) is another paragraph with the
following statement:  AThe undersigned request you to open the
joint account under the following designation: ________________.@  This blank is
not completed.

C.      The Dain
Rauscher Account Agreement Did Not Satisfy Section 452

Beatty argues the Dain Rauscher account agreement did not
satisfy section 452 because Kathryn and Thomas failed to designate the account
as survivorship or non-survivorship.  Beatty asserts that it is impossible to
determine whether the spouses intended to own the account with a right of
survivorship based on their failure to strike through paragraph (b) and specify
a designation of the account in the space provided.  In contrast, Holmes argues
that Kathryn=s and Thomas=s failure to
provide any names relative to paragraph (b) demonstrates they effectively chose
paragraph (a).








We agree with Beatty that the account agreement did not
clearly reflect intent to own the account with a right of survivorship. 
Kathryn and Thomas failed to take the one action required to clearly designate
the account as held with a right of survivorshipCaffirmatively
select paragraph (a).  They could have marked out paragraph (b) if they had
intended to select paragraph (a), but they did not do so.  In addition, they
did not complete the portion of the form requesting that they specify a designation
for the account.  Further, in another paragraph of the form, they did not fill
in blanks that would inform Dain Rauscher to whom communications should be
directed.  In fact, they did not complete any of the information requested on
the form document.  The only action they took regarding the form was to sign
and date it.  Having failed to fulfill any of the requested actions
except for signing and dating the form, we cannot assume they chose the
survivorship option set forth in paragraph (a).

In addition, to hold that Kathryn and Thomas effectively
chose paragraph (a) by failing to provide names relative to paragraph (b), we
must conclude paragraphs (a) and (b) were the only possible designations for
the account.  However, as this dispute illustrates, paragraphs (a) and (b) were
not the only possible designations for the account.  As urged by Beatty, there
was also the option that the account pass pursuant to the testamentary
provisions of the Probate Code upon the death of a spouse.  Holmes argues that this
option was not available because the instruction AStrike out
paragraph (a) or (b) whichever is inapplicable . . .@ rendered the
designations set forth in these paragraphs the only choices.  However, the
option that the account pass pursuant to the testamentary provisions of the
Probate Code would always be available because parties must first comply with
the applicable statute to effect a non-testamentary transfer under Chapter XI. 
See Tex. Prob. Code Ann. '' 436B462.  The account
agreement in its present form did not affirmatively reflect any intent to
effect a non-testamentary transferCthrough a right of
survivorship or otherwise.  








We note that Beatty cites for analogy several cases holding
that joint account holders failed to create a right of survivorship under
section 439(a), which governs right of survivorship in  multiple-party accounts
in general.  See Tex. Prob. Code
Ann. ' 439(a).[7] 
Holmes contends these cases are inapplicable because section 439(a) requires
more stringent language to create a right of survivorship than section 452.[8] 
However, with respect to the Dain Rauscher account agreement, we are not considering
whether certain language is sufficient to satisfy section 452.  If the spouses
chose paragraph (a), the language contained therein clearly satisfied section
452.  See Tex. Prob. Code Ann. ' 452.  Instead,
the issue is whether the spouses chose paragraph (a).  We see no reason that
cases applying section 439(a) cannot provide guidance when determining whether
the spouses chose a paragraph providing a survivorship option.








Nevertheless, the cases cited by Beatty are not exactly on
point.  However, he cites two cases involving signature cards on which joint
account holders failed to mark the appropriate box to affirmatively select
either the option of ownership with right of survivorship or the competing
option of ownership without right of survivorship.  See Estate of
Graffagnino, No. 09-00-434 CV, 2002 WL 31126901, at *2. (Tex. App.CBeaumont Sept. 26,
2002, pet. denied) (not designated for publication); Ephran v. Frazier,
840 S.W.2d 81, 82 (Tex. App.CCorpus Christi 1992, no writ).  Thus, it
was impossible to ascertain the parties= intent to create
a right of survivorship from the signature cards.  See Estate of Graffagnino,
2002 WL 31126901, at *2; Ephran, 840 S.W.2d at 82B83, 87.

We are presented with a different situation in that Kathryn
and Thomas were not requested to mark a box corresponding to the selected
designation.  Rather, they were requested to mark out the inapplicable
designation and also fill in a blank to specify a designation.  Regardless, Estate
of Graffagnino and Ephran at least instruct that the parties clearly
express within the written agreement their intent to choose a  survivorship
option.  See Estate of Graffagnino, 2002 WL 31126901, at *2; Ephran,
840 S.W.2d at 82B83, 87.[9] 
Because the Dain Rauscher agreement did not clearly demonstrate intent to
choose the survivorship option, it failed to create a right of survivorship
under section 452.








Finally, Holmes briefly suggests the account was owned with
a right of survivorship because the agreement is entitled, AThomas J. Holmes
and Kathryn V. Holmes, JT TEN,@ and AJT TEN@ is also shown on
the face of securities issued from the account in certificate form.  However,
mere inclusion of AJT TEN@ next to Kathryn=s and Thomas=s names in the
account title did not sufficiently convey intent to create a right of
survivorship.  As Beatty asserts, parties may own property as joint tenants
without being subject to a right of survivorship.  Further, nothing in the
account agreement as a whole indicated these initials meant Ajoint tenancy with
right of survivorship.@   Moreover, inclusion of AJT TEN@ on securities
issued out of the account is immaterial when determining whether Kathryn and
Thomas expressed intent to create a right of survivorship within the account
agreement. 

Accordingly, the trial court erred by ruling that Kathryn
and Thomas created a right of survivorship in the Dain Rauscher account and thus
holding the account is the property of Holmes, as an asset of Thomas=s Estate.  We
sustain Beatty=s first issue.

IV.  The Securities Held in
Certificate Form

In his second issue, Beatty contends the securities held in
certificate form by Kathryn and Thomas were not owned with a right of
survivorship.  For the reasons explained below, we agree.

A.      The
Securities








The thirty-six securities in certificate form that are
subject of this appeal had been issued out of a Kemper Securities, Inc.
account, a Raymond James & Associates account, or a Principal/Eppler,
Guerin & Turner, Inc. account.[10] 
Thirty-four of the certificates were styled ATHOMAS J. HOLMES
& KATHRYN V. HOLMES, JT TEN@ on the face of the certificates.  These
certificates provided the following on the back:  AJT TEN B as joint tenancy
with right of survivorship and not as tenancy in common.@[11]  Two of the
certificates were styled ATHOMAS J. HOLMES & KATHRYN V. HOLMES
JT WROS@ on the face of
the certificates.  These certificates did not provide a definition for AJT WROS.@  None of the
certificates at issue were signed by Kathryn or Thomas because owners do not
typically sign stocks or bonds until they are ready to sell or redeem them.

B.      Summary
Judgment Grounds 

Preliminarily, we must address some procedural issues with
respect to the summary judgment grounds to be considered in this appeal. 
Holmes moved for summary judgment with respect to the securities in certificate
form on two grounds: (1) the securities were owned with a right of survivorship
because the brokerage account agreements created a right of survivorship
pursuant to Probate Code section 452 and continued to govern the character of
the securities after they were issued out of the accounts; and (2) alternatively,
the securities were owned with a right of survivorship pursuant to a different
Probate Code provisionCsection 450.

On appeal, Beatty urges two sub-issues to support his
argument that the securities held in certificate form were not owned with a
right of survivorship:  (1) Probate Code section 450 cannot be utilized to
create a right of survivorship in community property; and (2) the Kemper
account agreement (which the trial court ruled was owned by Kathryn and Thomas
with a right of survivorship) no longer governed the character of the
securities issued out of the account in certificate form.








In response, Holmes asserts that Beatty effectively
concedes the securities issued out of the Kemper account are owned with a right
of survivorship because (1) he does not challenge the trial court=s ruling the
Kemper account was owned with a right of survivorship, and (2) he conceded in
the trial court that securities are characterized in accordance with the
accounts from which they were issued.  We disagree that Beatty made any such
concession in the trial court.   Holmes refers to the following statement in
Beatty=s response to
Holmes=s motion for
summary judgment: Aif a valid community property with right
of survivorship agreement existed between spouses at the time of the asset=s acquisition,
then the assets purchased at that time would be characterized accordingly.@  This statement
apparently indicates Beatty agreed that a security was owned with a right of
survivorship at the time it was purchased through an account governed by a
valid survivorship agreement.  His statement did not amount to a concession
that a survivorship agreement governing an account continued to apply to a
security after it was distributed from the account.  Consequently, Beatty may
challenge the trial court=s ruling as to all the securities at
issue.

As another procedural matter, Beatty=s second sub-issue
is directed solely to the securities issued out of the Kemper account.  In this
sub-issue, Beatty does not address securities issued out of the Raymond James
and Principal accounts because the trial court did not rule these accounts were
owned with a right of survivorship.  Rather, in the separate order rendered the
same day denying Holmes=s motion for summary judgment as to some
assets, the trial court denied Holmes=s motion for
summary judgment as to the Raymond James and Principal accounts.  Nevertheless,
in his responsive brief, Holmes asserts that we may uphold the trial court=s summary judgment
in this case on the ground that all securities were owned with a right of
survivorship because the account agreements created a right of survivorship and
continued to govern the character of the securities after they were issued out
of the accounts.[12]








We are presented with an unusual procedural situation.  In
its order, the trial court did not state the ground on which summary judgment
was granted.  Ordinarily, when a movant asserts multiple grounds for summary
judgment, and the order does not specify the ground on which summary judgment
was granted, the appellant must negate all grounds on appeal.  Lewis v.
Adams, 979 S.W.2d 831, 833 (Tex. App.CHouston [14th
Dist.] 1998, no pet.) (citing State Farm Fire & Cas. Co. v. S.S.,
858 S.W.2d 374, 381 (Tex. 1993).  If the appellant fails to negate each ground
upon which the judgment may have been granted, the appellate court must uphold
the summary judgment.  See id.  Further, when the trial court=s order does not
specify the grounds relied upon, we must affirm the summary judgment if any of
the independent summary judgment grounds is meritorious.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex. 2000); Ortiz
v. Collins, 203 S.W.3d 414, 420 (Tex. App.CHouston [14th
Dist.] 2006, pet. denied).  








However, we have considered the order granting summary
judgment in conjunction with the order denying summary judgment as to other
assets, rendered the same day.  It is  clear the trial court did not grant
summary judgment as to the securities in certificate form on the ground that
the account agreements created a right of survivorship and continued to govern
the character of the securities after they were issued out of the accounts.
Significantly, the trial court ruled as follows: (1) the Kemper account and
five securities issued out of that account were owned with a right of
survivorship, but one security issued out of that account was not owned
with a right of survivorship; (2) The Dain Rauscher account was owned
with a right of survivorship, but the securities issued out of that account
were not owned with a right of survivorship; (3) the Raymond James
account was not owned with a right of survivorship, but the securities
issued out of that account were owned with a right of survivorship; (4)
the Principal account was not owned with a right of survivorship, but a
security issued out of that account was owned with a right of
survivorship.  Therefore, it is obvious the trial court did not grant summary
judgment on the ground that any survivorship provisions in the account
agreements continued to govern the character of the securities after they were
issued out of the accounts.

It would strain logic to require Beatty to challenge, and
for this court to uphold, a summary judgment on a certain ground when it is
abundantly obvious the trial court did not grant summary judgment on that
ground.  Accordingly, despite the trial court=s failure to
specifically express the ground on which summary judgment was granted, in this
limited circumstance, we need not consider all grounds.  We will consider the
only ground on which summary judgment could possibly have been grantedCHolmes=s contention
regarding Probate Code section 450.

C.      Probate
Code Section 450

Section 450, entitled AProvisions for
Payment or Transfer at Death,@ is the only provision contained in Part 2
of Chapter XI of the Probate Code.  Tex.
Prob. Code Ann. ' 450.  Section 450 provides in pertinent
part:

 (a) Any of the following provisions in an insurance
policy, contract of employment, bond, mortgage, promissory note, deposit
agreement, employees= trust, retirement account,
deferred compensation arrangement, custodial agreement, pension plan, trust
agreement, conveyance of real or personal property, securities, accounts
with financial institutions as defined in Part 1 of this chapter, mutual fund
account, or any other written instrument effective as a contract, gift,
conveyance, or trust is deemed to be nontestamentary, and this code does not
invalidate the instrument or any provision:

(1) that money or other benefits theretofore due to,
controlled, or owned by a decedent shall be paid after his death to a person
designated by the decedent in either the instrument or a separate writing,
including a will, executed at the same time as the instrument or subsequently;

(2) that any money due or to become due under the
instrument shall cease to be payable in event of the death of the promisee or
the promissor before payment or demand;  or








(3) that any
property which is the subject of the instrument shall pass to a person
designated by the decedent in either the instrument or a separate writing,
including a will, executed at the same time as the instrument or subsequently.

Tex. Prob. Code Ann. ' 450(a) (emphasis
added).  Thus, section 450 expressly authorizes the non-testamentary transfer
of money, property, or other benefits as provided in a variety of written
instruments effective as contracts, including securities.  See id.; Holley
v. Griggs, 65 S.W.3d 289, 293 (Tex. App.CEastland 2001, no
pet.).

In his motion for summary judgment, Holmes argued that
section 450 governs the transfer of securities being held as Ajoint tenants with
right of survivorship.@  He further argues that most of the
certificates at issueCthose styled AJT TEN@Cmet the requisites
of section 450 because AJT TEN@ was defined on
the back to mean Ajoint tenants with right of survivorship
and not as tenants in common.@  Therefore, Holmes contends the
securities passed to Thomas upon Kathryn=s death as valid
non-testamentary transfers pursuant to section 450.

In contrast, Beatty contends that section 450 may not be
utilized to create a right of survivorship, especially in community property. 
According to Beatty, agreements to create a right of survivorship in community
property are governed exclusively by Part 3; thus, spouses must comply with
section 452 (contained in Part 3) to create a right of survivorship in
community property.[13] 
Beatty argues that Holmes may not rely on section 450, which requires no
signatures, to circumvent section 452, which requires the signatures of both
spouses to create an effective survivorship agreement.  Compare Tex. Prob. Code Ann. ' 450 with ' 452.








We are presented with an issue of first impression because
we have found no authority addressing the relationship between section 450 and
Part 3; particularly whether spouses may create a right of survivorship in
certain types of community property, including securities, under section 450;
or whether creation of a right of survivorship in all community property is
controlled exclusively by Part 3.  Section 450 and Part 3 are both included in
Chapter XI, which governs non-testamentary transfers, but there is no provision
in Chapter XI addressing interaction between section 450 and Part 3.

To support his argument that section 450 was not meant to
create a right of survivorship in community property and Part 3 is the
controlling provision, Beatty relies on the development of Texas law on the
right of survivorship in community property, the language of section 450, and
the provisions constituting Part 3.  For the reasons explained below, we agree
with Beatty.

1.       Development
of Texas Law on Right of Survivorship in Community Property

Beatty cites the development of Texas law on the right of
survivorship in community property.  Joint accounts with rights of survivorship
involving community property have a  Along and troubled
history in Texas.@  See Haas v. Voight, 940
S.W.2d 198, 201 (Tex. App.CSan Antonio 1996, writ denied).  Before
1987, it was unconstitutional for spouses to own community property with a
right of survivorship.  See id. (citing Williams v. McKnight,
402 S.W.2d 505, 507 (Tex. 1966)).  Instead, to create a right of survivorship
in community property by agreement, the property had to first be partitioned
into separate property.  See id. (citing Williams, 402 S.W.2d at
507; Hilley v. Hilley, 342 S.W.2d 565, 566 (Tex. 1961)). In fact, over
the years, the Texas Supreme Court rejected as unconstitutional the Legislature=s attempts to
statutorily allow spouses to agree to hold community property with a right of
survivorship. See id. (citing Williams, 402 S.W.2d at 508; Hilley,
342 S.W.2d at 567).








In response, article XVI, section 15 of the Texas
Constitution was amended in 1987 to expressly provide that Aspouses may agree
in writing that all or part of their community property becomes the property of
the surviving spouse on the death of a spouse.@ See id.
(quoting Tex. Const. art. XVI, ' 15 (1987)).  In Haynes
v. Stripling, the court discussed the intent driving the proposal to amend
the constitution.  See 812 S.W.2d 397, 399B400 (Tex. App.CEastland 1991, no
writ).  The Haynes court quoted the following excerpt from the House
Committee Resolution Analysis of Senate Joint Resolution 35, 70th Legislature,
Regular Session, 1987, contained in the Legislative Reference Library:

Background Information

From 1840 to 1965, married couples could own community property with
the right of survivorship in the state of Texas.  However, since 1965, Texas
courts have persistently denied married couples an easy means of holding their
property with right of survivorship.  Although it has long been relatively
easy to create a right of survivorship in separate property, many banks and
savings and loans associations have often failed to provide forms by which
their customers can create effective joint tenancies out of community
property.  Many Texas spouses hold a substantial amount of assets in a form
that is ineffective to achieve their desired purpose.  Each of these accounts
or transactions represents a potential lawsuit that may result in frustrating
the intent of the spouses.

A simple means should be made available by which both
spouses by a written instrument can provide that the survivor of them may be
entitled to all or any designated portion of their community property without
the necessity of making a will for that purpose.

Purpose

This proposed
constitutional amendment will allow the people to provide that a Texas couple
may hold community property with a right of survivorship in the surviving
spouse.  This simple approach will obviate the need for creating a joint tenancy
with a right of survivorship‑‑a form of separate property ownership
between spouses that is now used for this purpose.  The accompanying
legislation is SB 893.

Id.
at
398B99 (some emphasis
added and some emphasis in original omitted).








Thereafter, in 1989, the Legislature amended section 46 of
the Probate Code, which generally addresses joint tenancies, to provide that A[a]greements
between spouses regarding rights of survivorship in community property are
governed by Part 3 of Chapter XI of this code.@  See Haas,
940 S.W.2d at 201B02 (quoting Tex. Prob. Code Ann. ' 46(b)).  Thus,
Part 3 came into being.  See id. at 202 (citing Tex. Prob. Code Ann. '' 451B62).

Beatty derives several arguments from the above-cited
history of the right of survivorship in community property.  As Beatty asserts,
section 450 was enacted in 1979Clong before the 1987 constitutional amendment
allowing spouses to create a right of survivorship in community property.  See
Tex. Prob. Code Ann ' 450.  Thus, when
section 450 was enacted, it was unconstitutional for spouses to own community
property with a right of survivorship.  A statute is presumed to have been
enacted by the Legislature with complete knowledge of the existing law and with
reference to it.  Acker v. Tex. Water Comm=n, 790 S.W.2d 299,
301 (Tex. 1990); Ellen v. Brazos County Bail Bond Bd., 127 S.W.3d 42, 47
(Tex. App.CHouston [14th Dist.] 2003, no pet.).  Consequently, as
Beatty asserts, we question that the Legislature could have intended for
section 450 to be used by spouses to create a right of survivorship in
community property when it was unconstitutional to do so under then-existing
law.

Further, the above-emphasized portions of the legislative
analysis for the then-proposed 1987 constitutional amendment indicate the
Legislature saw the need for the amendment because there was no means at that
time, short of partition, for spouses to hold community property with a right
of survivorship property.  Therefore, this analysis indicates that the
Legislature did not view section 450, which had been in effect for eight years
at the time of the analysis, as allowing spouses to create a right of
survivorship in community property.

 








2.       Language
of Section 450 

Beatty also contends that the explicit language of section
450 indicates it was not intended to be used to create a joint tenancy with
right of survivorship in community property.  As Beatty asserts, section 450
never addresses creation of a Aright of survivorship@ and does not
contain the word Asurvivorship.@  See Tex. Prob. Code Ann. ' 450.  By
comparison, section 439 (contained in Part 1 of Chapter XI, governing
multiple-party accounts in general) is entitled ARight of
Survivorship@; see Tex.
Prob. Code Ann. ' 439; and Part 3 is entitled ACOMMUNITY PROPERTY
WITH RIGHT OF SURVIVORSHIP.@  See Tex. Prob. Code Ann. ' ' 451B462.

In addition, Beatty cites section 450(a)(1) which renders
effective as a non-testamentary transfer a provision in one of the listed
instruments stating Athat money or other benefits theretofore
due to, controlled, or owned by a decedent@ shall be paid
after his death to a designated person.  See Tex. Prob. Code Ann. ' 450(a)(1)
(emphasis added).  Relying on the emphasized language, Beatty suggests section
450 applies to money, benefits, or property owned or controlled by, or payable
to, a singular decedentCwhether separate or community property. 
In contrast, he asserts that creation of a joint tenancy with right of
survivorship constitutes an agreement between two or more persons
providing that property they jointly own and control vests in the survivor upon
the death of one party.[14] 
See Tex. Prob. Code Ann. ' 439 (governing
multiple-party accounts in general);  Tex.
Prob. Code Ann. ' 452 (governing right of survivorship in
community property).  Thus, Beatty argues section 450 does not apply to joint
management community property because that property cannot be Acontrolled@ or Aowned@ by one spouse as
set forth in section 450.








The intended scope of section 450, and particularly whether
the Legislature meant for  section 450 be used to create a joint tenancy with
right of survivorship, especially in community property, presents a difficult
question.  On one hand, based on the development of the law on the right of
survivorship in community property and the language of section 450, Beatty
presents some persuasive arguments that the purpose of section 450 was not to
create a right of survivorship, especially in community property.   

On the other hand, if read in isolation, the language of
section 450 might support Holmes=s argument that it
can be used to create a joint tenancy with right of survivorship in community
property.  Section 450 allows a decedent to provide in certain types of
instruments effective as contracts, including securities, that money, property,
or other benefits shall pass to a person designated by the decedent upon his or
her death.  See Tex. Prob. Code
Ann.  ' 450.  Using survivorship language would seem to be a
method of designating another person to receive a decedent=s property at his
or her death, although, as Beatty notes, section 450 does not contain the
phrase Aright of
survivorship@ or any Asurvivorship@ language.  See
id.  Moreover, although Beatty argues that section 450 was  expressly
made applicable to a singular decedent, under rules of statutory construction, 
A[t]he singular
includes the plural and the plural includes the singular unless expressly
provided otherwise.@  Tex.
Gov=t Code Ann. ' 312.003(b) (Vernon 2005); Holley,
65 S.W.3d at 294 (rejecting argument that, pursuant to section 450=s provision that
decedent may designate a Aperson@ to receive
property, section 450 could not be used to validate decedent=s designation of
multiple sons to receive investment account because singular included the
plural).








Nevertheless, we need not decide the full intended scope of
section 450.  Even if we agree that one of the intended purposes of section 450
was creation of a joint tenancy with right of survivorship in certain types of
community property, as urged by Holmes and necessarily interpreted by the trial
court, section 450 irreconcilably conflicts with Part 3.  Significantly,
section 450 does not require any signatures to effect a non-testamentary
transfer under that provision.  See Tex.
Prob. Code Ann. ' 450.  In contrast, Part 3 emphatically
requires a written agreement signed by both spouse to create a right of
survivorship in all or part of their community property.  See Tex. Prob. Code Ann . ' ' 451, 452.
Therefore, allowing spouses to create a right of survivorship in certain types
of community property pursuant to section 450 conflicts irreconcilably with the
requirements of Part 3 for creating of a right of survivorship in community
property.  For the reasons explained below, we conclude that Part 3 is the
controlling provision for creating a joint tenancy with right of survivorship
in community property.

3.       Part 3 is
the Controlling Provision for Creating a Joint Tenancy With Right of
Survivorship in Community Property.

Under the rules of statutory construction, subject to an
exception inapplicable here,  if statutes enacted at the same or different
sessions of the Legislature are irreconcilable, the statute latest in date of
enactment prevails.  See Tex. Gov=t Code Ann. ' 311.025(b)
(Vernon 2005).  As we have explained, Part 3 was enacted in 1989, long after
section 450, which was enacted in 1979.  Therefore, Part 3 is the controlling
provision with respect to the requirements for creating a joint tenancy with
right of survivorship in community property.[15]

Moreover, in this case, we need not rely solely on the fact
that Part 3 was enacted after section 450.  As Beatty argues, the language of
the provisions comprising Part 3 and the legislative history behind enactment
of Part 3 demonstrate joint tenancies with right of survivorship in community
property are governed exclusively by Part 3.








As we have explained, shortly after the 1987 constitutional
amendment allowing spouses to own community property with a right of
survivorship, the Legislature amended section 46 and enacted Part 3.  Section
46 expressly provides that A[a]greements between spouses regarding
rights of survivorship in community property are governed by Part 3 of Chapter
XI of this code.@  Tex.
Prob. Code Ann ' 46(b).  Section 46 contains no exception
for the specific types of instruments addressed in section 450.  See id. 
Rather, section 46 directs us solely to Part 3 when considering a right of
survivorship in community property.  See id. Thus, as Beatty
argues, section 46 indicates Part 3 is the exclusive means for creating a right
of survivorship in community property.  See id.

Similarly, Part 3 contains no exception to the formalities
required to create a right of survivorship in community property for the
specific types of instruments addressed in section 450.  See generally
Tex. Prob. Code Ann. '' 451B462.  In fact,
Part 3 does not mention Part 2 (section 450) at all, or vice versa.  See
generally id.[16]








Furthermore, significantly, the Haas court
recognized that, after the 1987 constitutional amendment and ensuing enactment
of Part 3, a right of survivorship can be created in community property in
either of two ways:  (1) the community property can be partitioned into
separate property and a joint tenancy with right of survivorship then created;
or (2) alternatively, a right of survivorship can be created by agreement
between the spouses as set forth in Part 3.  See Haas, 940 S.W.2d
at 202 (citing Haynes, 812 S.W.2d at 398B400).  Although
the Haas court did not mention section 450, the court indicated that
Part 3 provides the only method for creating a right of survivorship in
community property, other than partition into separate property.  See id.

Beatty also cites a lengthy excerpt of testimony from a
witness at a hearing in 1989 before the Senate Jurisprudence Committee
considering the proposed legislation that would later amend section 46 of the
Probate Code and enact Part 3.  While the views of legislative committees as to
the intended effect of a statute are not controlling, their views are entitled
to great respect and some weight in arriving at the correct interpretation.  Cohen
v. Rains, 745 S.W.2d 949, 953B54 (Tex. App.CHouston [14th
Dist.] 1988, orig. proceeding) (citing Nat=l Carloading Corp.
v. Phoenix‑El Paso Express Inc., 178 S.W.2d 133, 137 (Tex. Civ. App.C El Paso), aff=d, 142 Tex. 141,
176 S.W.2d 564 (1943)).   The witness, Lisa Hyde, a member of the tax section
of the State Bar and a member of the committee that prepared the bill, Senate
Bill 1643, discussed issues concerning the formalities to be required for
spouses to agree to hold their community property with a right of survivorship:

In 1987, as you know, the constitution was amended
to permit spouses to agree to hold their community property with the right of
survivorship.  The intent of the constitution was to give spouses a simple
means of transferring their property to the other spouse on the death of a
spouse without having to do a will for that purpose.

And as a result of the constitutional amendment
though a lot of questions have arisen and there are a lot of issues that remain
open.  So that we can hopefully keep the intent alive of having the simple
agreement but yet providing protection to other persons, and also to have to
facilitate the administration of the estate, we think that this is necessary.








A lot of issues that have come up
are what formalities are required for spouses to enter into such an agreement.  The constitution merely says that
spouses may agree in writing that all or part of their property becomes the
property of the survivor on the death of the spouse.  And various people have
asked what does agree in writing mean.  And so this statute says that the
spouses have to have an agreement in writing that is signed by both
spouses.  Some commentators have speculated that merely having a written
instrument that says or tells (Inaudible) - - that that is community property
with the right of survivorship would be sufficient.

They think that if you had a stock
certificate that was that way, or if someone conveyed property - - you know,
real property to a husband or wife by deed that said that it was going to them
as community property with the right of survivorship that would suffice.  And
we don=t think that it should because
there is too much of a possibility for fraud in that situation.  Because one
spouse could arrange for them to take title to property with a right of
survivorship without the knowledge of the other spouse.

So we think you
should have to have an agreement that both spouses sign.

Hearing
on Tex. S.B. 1643 Before the Senate Jurisprudence Comm., 71st Leg., R.S.
33B34 (May 4, 1989) (testimony
of Lisa Hyde) (emphasis added).  After further discussion on other subjects
relative to the bill, Hyde continued:

I want you-all to understand how important we feel
this statute is because I think if we don=t get a statute and get some clarification on these issues
that there will be a lot of litigation in the next several years.  Because
people have been and will continue to do these types of agreements.  Particularly,
people have stock certificates all the time that are issued that purport to be
held with the right of survivorship, and in the past before the >87 amendment, we could just ignore
that and say well, it is not a valid form of holding title to properties that was
community property.  We
don=t have that certainty any more and
we need it, because especially where someone has a will that dispos[es] of
their property to someone other than their surviving spouse and then they=ve title documents that say that it
is held in with the right of survivorship.

So we feel like it
is very important that we have this and that it will be a certainty in this
area.

Id. at 40 (emphasis
added).








Beatty states that Hyde=s testimony
demonstrates the drafters of the bill resulting in amendment of section 46 and
enactment of Part 3 and the Legislature were concerned about the exact issue
involved in this caseCthat spouses would seek to use
designations on security certificates to create a right of survivorship. 
According to Beatty, Hyde=s testimony further indicates Part 3 was
enacted to alleviate these concerns by requiring a written agreement signed by
both spouses.

We agree that the above-emphasized portions of Hyde=s testimony
indicate the drafters of the bill resulting in amendment of section 46 and
enactment of Part 3 viewed instruments, including securities and deeds, which
merely indicate they are held with a right of survivorship as insufficient to
create a right of survivorship in community property.  Therefore, Hyde=s testimony
implicitly indicates that the drafters did not consider the existing section
450 as effective to create a right of survivorship in the types of instruments
listed therein, if community property.[17] 
Instead, the drafters of the bill urged that an agreement in writing signed
by both spouses should be required.  And, indeed, such an agreement is
required pursuant to the subsequently enacted Part 3.  Tex. Prob. Code Ann ' 452.








In addition, although we have found no authority addressing
the dispute at issue in this appeal, we note that at least one commentator has
seemed to adopt a similar interpretation: AA deed or stock
certificate issued to a husband or wife as community property with right of
survivorship does not, in itself, create a right of survivorship because the
instrument lacks the signatures of the spouses.@  Elizabeth
Williams, Interspousal Agreements and Transfers, 3 Tex. Fam. L. Serv. ' 24.22 (West
1999).  Clearly, this commentator opined that spouses must comply with section
452, which requires both spouses= signatures, to
create a right of survivorship in certain types of instruments, including
securities, owned as community property.

Finally, in contrast, Holmes contends the express language
of section 450 indicates the statute may be used to create a right of
survivorship in community property.  Specifically, section 450 states that Athis code does not
invalidate@ a provision in one of the listed instruments
providing that the instrument or money or property be paid to a designated
person upon the decedent=s death.  See Tex. Prob. Code Ann ' 450.  Therefore,
according to Holmes, the spouses= failure to comply
with Part 3 does not invalidate such a provision in their securities.

However, the above-quoted phrase was included in section
450 at its inception.  See Act of Aug. 27, 1979, 66th Leg., R.S., ch.
713, ' 31, 1979 Tex.
Gen. Laws 1760-61.  Because Part 3 did not exist at that time, the quoted
phrase cannot have been intended to refer to Part 3.  Rather, the quoted phrase
apparently refers to the provisions of the Probate Code governing testamentary
transfers of property.

To illustrate, in Holley, the court determined a
provision in an investment account stating that, upon the owner=s death, the
account would be divided equally among his five children was a valid
non-testamentary transfer under section 450.  See 65 S.W.3d at 291B93.  To reach this
conclusion, the court of appeals considered the comment to the section of the
Uniform Probate Code on which section 450 was based.  Id. at 293; see
also Tex. Prob. Code Ann. ' 450 historical
note.  The author of the comment explained that the purpose of the section was
to Aauthorize[] a
variety of contractual arrangements which have in the past been treated as testamentary.@  Holley,
65 S.W.3d at 293 (quoting Unif. Probate
Code ' 6-201 cmt.) (emphasis added).

 








The Senate Jurisprudence Committee bill analysis for
section 450 affirms its intended application:

The provisions
of a will are expressly made inapplicable to provisions for payment or
withholding of monies in the form of other non-testamentary transfers arising
by contract or gift.  (i.e. provisions for the payment or withholding of money
at death in an insurance policy, contract of employment, bond, mortgage,
promissory note, deposit agreement, pension plan, trust agreement, conveyance
of real or personal property, or any other instrument affecting the contract, gift
or conveyance or trust).

Senate Jurisprudence Comm., Bill Analysis, Tex. H.B. 329,
66th Leg., R.S. (1979) (emphasis added).  Thus, when stating in section 450
that Athis code does not
invalidate@ a provision in one of the listed instruments
providing money or property be paid to a designated person upon the decedent=s death, the
Legislature was referring to the testamentary provisions of the CodeCnot Part 3 of
Chapter XI, enacted after section 450.

In sum, we conclude that section 450 cannot be utilized to
create a joint tenancy with right of survivorship in community property because
the subsequently-enacted Part 3 provides the exclusive method for creating a
right of survivorship in community property.  Accordingly, the trial court
erred by ruling that the securities in certificate form were owned by Kathryn
and Thomas with a right of survivorship pursuant to section 450 and thus
holding the account is the property of Holmes, as an asset of Thomas=s Estate.  We
sustain Beatty=s second issue.

V.  Conclusion








Is sum, we hold the trial court erred by granting summary
judgment in Holmes=s favor with respect to all property that
is the subject of this appeal.  Accordingly, we reverse the ASummary Judgment@ dated March 11,
2003 with respect to the Dain Rauscher account and the securities in
certificate form listed in the order and remand for further proceedings
consistent with this opinion.  Because Beatty does not challenge the trial
court=s ruling relative
to the Kemper Securities, Inc. account, we affirm the ASummary Judgment@ with respect to
that account. 

 

 

/s/      Charles W.
Seymore

Justice

 

Judgment rendered and Opinion filed
August 14, 2007.

Panel
consists of Justices Hudson, Fowler, and Seymore.









[1]  Holmes agrees the assets were community property
only for purposes of the motion for summary judgment and this appeal.  He has
reserved his right to claim the assets were Thomas=s separate property or to assert a claim for
contribution if it is determined some or all of the property did not pass to
Thomas by right of survivorship when Kathryn died.





[2]  On the same day, the trial court also entered a
separate AOrder on Partial Summary Judgment@ denying Holmes=s
motion as to other brokerage accounts and securities.  Subsequently, Holmes and
Beatty each filed a further motion for summary judgment to address these other
accounts and securities, as well as additional assets.  The trial court=s order on the subsequent motions is the subject of
the companion appeal.





[3]  In the order that is the subject of the companion
appeal, the trial court granted summary judgment in Beatty=s favor as to certain securities that had been issued
out of the Dain Rauscher account.  This appeal involves only the account. 





[4]  The trial court also granted summary judgment in
Holmes=s favor as to the Kemper account, but Beatty does not
appeal that ruling because the account contained no assets at Kathryn=s death.





[5]  In the order that is the subject of the companion
appeal, the trial court granted summary judgment in Beatty=s favor as to the Raymond James and Principal
accounts.  This appeal involves only securities that had been issued out of the
accounts.





[6]  When Thomas and Kathryn opened the account, the
securities firm was known as Rauscher Pierce.





[7]  Section 439(a) provides in relevant part:

 

Sums remaining on deposit at the death of a party to a
joint account belong to the surviving party or parties against the estate of
the decedent if, by a written agreement signed by the party who dies, the
interest of such deceased party is made to survive to the surviving party or
parties.  Notwithstanding any other law, an agreement is sufficient to confer
an absolute right of survivorship on parties to a joint account under this
subsection if the agreement states in substantially the following form:  AOn the death of one party to a joint account, all sums
in the account on the date of the death vest in and belong to the surviving
party as his or her separate property and estate.@  A
survivorship agreement will not be inferred from the mere fact that the account
is a joint account. . . .  

 

Tex. Prob. Code Ann. ' 439(a).  AThe provisions of Part 1 apply to multiple party
accounts held by spouses with a right of survivorship to the extent that such
provisions are not inconsistent with the provisions of [Part 3].@  Tex. Prob.
Code Ann. ' 462. 





[8]  On appeal, Beatty acknowledges section 452 is the
operative provision in this case.  However, in the absence of any authority
construing section 452, he cites for guidance cases applying section 439(a).





[9]  Beatty relies on two other cases that are not
persuasive.  In Kitchen v. Sawyer, joint account holders failed to mark
the appropriate box on a signature card to select one of three options: AIndividual@; AJoint Tenancy with Right of Survivorship@; or  APartition and
Joint Tenancy Agreement (If Accountholders are husband and wife).@ 814 S.W.2d 798, 799 (Tex. App.CDallas 1991, writ denied).  Nonetheless, the surviving
account holder suggested the agreement as a whole showed the account holders
necessarily chose AJoint Tenancy with Right of Survivorship@ because there were two account holders, who were  not
spouses; thus, the only other options, AIndividual@ and APartition and
Joint Tenancy Agreement (If Accountholders are husband and wife),@ were inapplicable.  See id. at 800. 
The court held that the signature card was not an unambiguous agreement
establishing a right of survivorship as required by section 439(a).  Id.
at 801.  The court reasoned that its disposition was controlled by another
case, in which the court held extrinsic evidence is inadmissible to prove
intent to create a right of survivorship.  See id. at 800B01 (citing Chopin v. InterFirst Bank Dallas N A,
694 S.W.2d 79 (Tex. App.CDallas 1985, writ ref=d n.r.e.)).  However, the court=s
reasoning seems wholly inapplicable because resolution of the issue in Kitchen
did not involve consideration of extrinsic evidence.  See id. at
799B801.  In any event, the court never stated the parties= failure to affirmatively select a designation
rendered the card insufficient to create a right of survivorship.  See id. 
Thus, Kitchen is not controlling here.  Beatty also cites Herring v.
Johnson, No. 14-03-00266-CV, 2004 WL 395877 (Tex. App.CHouston [14th Dist.] March 4, 2004, pet. denied) (mem.
op. on reh=g).  However, Herring is distinguishable from
this case; the court found no right of survivorship, although the joint account
holders marked the box corresponding to that designation, because the signature
card lacked the decedent=s requisite signature.  See id. at *2.





[10]  All of these securities are outlined in the summary
judgment order: those issued out of the Kemper Securities account are listed as
items 1-5; those issued out of the Raymond James account are listed as items
6-35; and the one security issued out of the Principal/Eppler, Guerin &
Turner account is listed as item 36.





[11]  These securities also provided that the abbreviation
JT TEN Awhen used in the Inscription on the face of this
certificate, shall be construed as though they were written out in full
according to applicable laws or regulations.@





[12]  Holmes acknowledges the trial court denied his
motion for summary judgment as to the Raymond James and Principal accounts and
that ruling is not the subject of this appeal; but, he contends we may
determine whether these accounts were owned with a right of survivorship for
purposes of deciding whether the securities issued out of these accounts were
owned with a right of survivorship. Due to Holmes=s responsive brief, Beatty addresses securities issued out of the Raymond
James and Principal accounts in his reply brief while also maintaining it was
unnecessary to do so because the trial court did not grant summary judgment on
the ground these securities were governed by the respective account agreements.





[13]  We note that Beatty apparently does not suggest
section 450 is inapplicable to any community property, and his argument
regarding section 450 is not limited to community property. In short, it is the
creation of a joint tenancy with right of survivorshipCwhether in separate or community propertyCthat Beatty contends cannot be the subject of section
450.  He argues that creation of a joint tenancy with right of survivorship is
governed by Part 1 (for multiple-party accounts in general) and Part 3 (for
community property).





[14]  Similarly, although not specifically cited by Beatty, section 450(a)(3)
renders effective as a non-testamentary transfer a provision in one of the
listed instruments stating Athat any property which is the subject of the instrument shall pass to
a person designated by the decedent.@  See Tex.
Prob. Code Ann. ' 450(a)(3) (emphasis added).





[15]  Initially, securities were not specifically included in the list of
instruments effective as contracts under section 450.   Instead, section 450
was amended in 1997 (after enactment of Part 3) to add securities to the list
of instruments.  See Act of Aug. 27, 1979, 66th Leg., R.S., ch. 713, ' 31, 1979 Tex. Gen. Laws 1760-61, amended by Act
of Sept. 1, 1997, 75th Leg., R.S. ch.1302, '
14, 1997 Tex. Gen. Laws 4959.  However, the basic premise of section 450 that
designations in instruments effective as contracts are valid non-testamentary
transfers was in effect long before enactment of Part 3, although section 450
has been amended several times to include more types of instruments.  See
id.  Accordingly, we consider Part 3 as the later enacted statute
despite the subsequent amendments to section 450.





[16]  According to Beatty, if the Legislature had intended section 450 to
create a right of survivorship, it would have combined Part 2 (section 450)
with Part 1 (governing right of survivorship in multiple-party accounts) or
Part 3 (governing right of survivorship in community property).  As a
comparison, the Legislature did address interaction of Part 3 with Part
1: AThe provisions of Part 1 apply to
multiple party accounts held by spouses with a right of survivorship to the
extent that such provisions are not inconsistent with the provisions of [Part
3].@  Tex.
Prob. Code Ann. ' 462.  Thus, the Legislature
recognized a potential conflict between Part 3 and Part 1 and resolved it by
mandating that Part 3 controls.  The Legislature did not include a similar
provision in Part 3 specifying that Part 3 controls to the extent of any conflict
with Part 2 (section 450).  Arguably, the fact that section 450 is not
mentioned in Part 3 indicates the Legislature did not view section 450 as a
means to create a Aright of survivorship@ in community property; thus, the
Legislature did not conceive of a need to resolve any inconsistency and specify
a controlling provision.  Regardless, Part 3 contains no exception for the
instruments listed in section 450.





[17]  At the time of Hyde=s testimony, securities were not yet included in the list of
instruments effective as contracts under section 450.  See Act of Aug.
27, 1979, 66th Leg., R.S., ch. 713, '
31, 1979 Tex. Gen. Laws 1760-61, amended by Act of Sept. 1, 1997, 75th
Leg., R.S. ch.1302, ' 14, 1997 Tex. Gen. Laws 4959.  However, it is clear
Hyde=s opinion that a designation on a securities
certificate is insufficient to create a right of survivorship in community
property was not based on the mere fact that securities were not included in
section 450.  Hyde also mentioned that a designation on a conveyance of real
property was insufficient to create a right of survivorship.  At the time of
her testimony, a Aconveyance of real or personal property@ was specifically included in the list of
instruments effective as contracts under section 450.  See Act of Aug.
27, 1979, 66th Leg., R.S., ch. 713, '
31, 1979 Tex. Gen. Laws 1760-61.  Thus, her testimony implicitly indicates the
drafters of the bill resulting in Part 3 did not consider section 450 as
effective to create a right of survivorship in certain instruments, if
community property.